**Andre Marcus BRAGG, Petitioner– Appellant,**

v.

**Warden GALAZA, Respondent– Appellee.**

**No. 99–16636.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 7, 2000

Filed March 12, 2001

1084

Quin Denvir, Federal Defender; Daniel J. Broderick, Chief Assistant Federal Defender; Carolyn M. Wiggin, Staff Attorney; Allison Claire, Assistant Federal Defender, Sacramento, California, for the petitioner-appellant.

Bill Lockyer, Attorney General of the State of California; David P. Druliner, Chief Assistant Attorney General; Robert R. Anderson, Senior Assistant Attorney General; Arnold O. Overoye, Senior Assistant Attorney General; Mathew Chan, Deputy Attorney General, Sacramento, California, for the respondent-appellee.

Before: O'SCANNLAIN, LEAVY, and GOULD, Circuit Judges.

RONALD M. GOULD, Circuit Judge:

Andre Marcus Bragg ("Bragg") petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, 110 Stat. 1218 ("AEDPA"). Bragg appeals the district court's order denying his habeas corpus petition, arguing that he received ineffective assistance of counsel during his murder trial in California state court. We affirm and hold that (1) Bragg cannot establish ineffective assistance of counsel on the factually inadequate record before us; and (2) AEDPA does not permit us to remand for an evidentiary hearing because Bragg failed to develop the factual basis for his claim in state court.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 5, 1992, in Stockton, California, Rachelle Jones died in her car after being shot by a gunman in a moving car. On June 17, 1992, Bragg, the suspected driver of the moving car, was charged with murder, attempted murder, shooting at an occupied motor vehicle, and being a driver who permitted discharge of a firearm from a vehicle. Bragg's defense was that his car was inoperable and that he was elsewhere on the night of the shooting. Bragg's trial on these charges began on February 16, 1993.

At Bragg's trial, several witnesses testified that the car from which the bullets were fired carried at least one passenger. On the third day of trial the prosecution called Byrron Australia Williams ("Williams"). When Williams began to testify, Bragg's appointed counsel, Patrick Piggott ("Piggott"), alerted the trial judge to a potential conflict of interest. Piggott had just learned that Williams would iden-

tify Gary Norwood, Bragg's cousin, as the passenger; however, two days earlier Piggott had agreed to represent Norwood in an unrelated case. The court then held three formal conferences on the record in chambers to assess the conflict of interest issue.

At the first conference, which included the trial judge and Piggott, Piggott explained that Norwood's mother talked to him about Bragg's case during jury selection for Bragg's trial and told Piggott about family relationships "and certain things about May." During that conversation, Norwood's mother asked Piggott if he would represent Norwood in an unrelated case. Piggott also told the court that he met with Norwood about the unrelated case on the first day of Bragg's trial, but that "there was no discussion about May 5th [the day of the shooting]," and that "[a]s far as direct contact about this case and facts of this case, it only has to do with locating witnesses and what they know about the feuds, what they know about Andre's car." Piggott further said that he received no information about Bragg's case from Norwood and that he did not know that Norwood would be involved in Bragg's case until Williams took the stand. Piggott did express concern, however, that if Norwood was identified as a passenger in the car, Piggott ethically could not cross-examine Norwood or witnesses against him because any testimony might prejudice Norwood in the unrelated case. Piggott also expressed concern that he could not argue to Bragg's jury that Norwood was the shooter.

At the second conference, which included the trial judge, Piggott and Bragg, the court discussed the possible conflict with Bragg, and told Bragg that Bragg had to decide whether the inability to explore Norwood's involvement would prejudice his case. The court observed that Williams' testimony identifying the passenger might not be significant because other witnesses had testified that there was a passenger in the car when Rachelle Jones was shot.

At the third conference, which began with the trial judge and Piggott and later included the defense investigator, and later still Bragg, Piggott informed the court that Norwood had just told a defense investigator that he knew "all about" Bragg's case. Piggott told the court that he had not inquired further: "If I have to get out from both sides, I thought I shouldn't ask any more," and that, as far as he knew, Norwood did not tell the investigator any facts about Bragg's case. The court then, with the defense investigator and Bragg also present, ruled that Piggott should withdraw from Norwood's case, and that the record would reflect that none of the facts of Norwood's involvement came directly or indirectly from Norwood or his family to Piggott's investigator. The court declared that "there would be no impediment to [Piggott] cross-examining any witness about Norwood's involvement in this case."

After the court discussed its resolution of the conflict with Bragg, the trial resumed. In closing argument, Piggott used the fact that Norwood may have been in the car to disparage the government's investigation, but did not suggest that Norwood might have been the shooter.

On February 24, 1993, the jury convicted Bragg of second degree murder pursuant to California Penal Code ("CPC") section 187, attempted murder pursuant to CPC sections 664, shooting at an occupied motor vehicle pursuant to CPC section 246, and permitting the discharge of a firearm from a motor vehicle pursuant to CPC section 12034(B).

The court sentenced Bragg to fifteen years to life in prison for second-degree murder and a consecutive term of seven years in prison for attempted murder. Bragg appealed his convictions to the California Court of Appeal asserting, inter alia, claims of ineffective assistance of counsel. The California Court of Appeal affirmed. Bragg petitioned for review by the Califor-

nia Supreme Court, again asserting, inter alia, ineffective assistance of counsel. The California Supreme Court denied Bragg's petition.

Bragg then petitioned for a writ of habeas corpus from the United States District Court for the Eastern District of California on grounds that he had received ineffective assistance of counsel. Adopting the findings and recommendations of the magistrate judge, the district court denied Bragg's habeas petition. Bragg appeals this order, arguing that he was denied effective assistance of counsel because of (1) Piggott's actual conflict of interest; and (2) Piggott's failure to investigate. We affirm.

## DISCUSSION

### A. *Ineffective Assistance of Counsel*

#### 1. *Conflict of Interest*

Bragg argues that he was denied his Sixth Amendment right to effective assistance of counsel because his trial lawyer had an actual conflict of interest.

■ In a federal habeas action, we review de novo claims of ineffective assistance of counsel and conflict of interest. *Sanders v. Ratelle*, 21 F.3d 1446, 1451 (9th Cir.1994) (citing *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

■ To establish a Sixth Amendment violation based on a conflict of interest Bragg must show (1) that Piggott actively represented conflicting interests; and (2) that this adversely affected Piggott's performance. *Mannhalt v. Reed*, 847 F.2d 576, 579 (9th Cir.1988).

#### a. Active representation of conflicting interests

■ Bragg contends that Piggott actively represented conflicting interests while defending him because Piggott never successfully withdrew from his representation of Norwood.[1]

---

1. Bragg also argues that even if Piggott terminated his representation of Norwood, he

maintained a conflicting duty of loyalty after termination because of successive representa-

■■ Without a showing of prejudice, a "theoretical" or "potential" conflict is insufficient to constitute actual conflict; instead, Piggott must have actively represented conflicting interests. *Bonin v. Calderon*, 59 F.3d 815, 827 (9th Cir.1995). Bragg must prove an actual conflict "through a factual showing on the record." *Morris v. California*, 966 F.2d 448, 455 (9th Cir.1991).

■ Bragg presents facts showing that Norwood did not answer the defense investigator's telephone call terminating Piggott's relationship with Norwood because he was away for the day. Piggott's investigator left a message with Norwood's mother stating that Piggott would no longer be representing Norwood. There is no evidence to support Bragg's claim that Norwood did not receive this message or Bragg's contention that Piggott believed his relationship with Norwood continued throughout Bragg's trial.

■ As the California Court of Appeal viewed the evidence: "Trial counsel withdrew from Norwood's case; he was aware he could fully question Norwood as a witness if he chose to do so." This factual finding by a state court is "presumed to be correct" and Bragg has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546–47, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). Bragg has failed to present clear and convincing evidence that Piggott continued to represent Norwood throughout Bragg's trial, and, there-

tion. This argument is flawed because any duty of loyalty in a successive representation case is owed to the first, not the second, client. *See, e.g., Flatt v. Superior Court of Sonoma Cty.*, 9 Cal.4th 275, 36 Cal.Rptr.2d 537, 885 P.2d 950, 958 (1994). Bragg, not Norwood, was Piggott's first client, thus Piggott owed *Bragg*, not Norwood, a continuing duty of loyalty throughout his representation of Norwood.

fore, we cannot hold that Bragg's conclusory assertions establish an actual conflict of interest.[2]

b. Adverse effect on performance

■ Even if it had been shown that Piggott actively represented conflicting interests during Bragg's trial, Bragg's ineffective assistance claim still could not be successful absent proof that such conflict adversely affected Piggott's performance. But, here, on this record, Bragg does not show an adverse effect on Piggott's performance.

Bragg contends that Piggott failed to do things that might have helped Bragg's case, arguing further that these omissions resulted from a conflict of interest. For example, Bragg asserts that Piggott did not interview Norwood,[3] and that such an interview might have helped Bragg; that Piggott did not call Norwood as a witness, and that his testimony might have helped Bragg; and that Piggott did not argue that Norwood was the shooter to raise reasonable doubt, and that such argument might have helped Bragg.

While it might be possible that the reasons for any inaction of Piggott could be pertinent to Bragg's claims, on the record before us we cannot hold based on speculation that Piggott's representation of Norwood was the cause of any inactions by Piggott. Moreover, if, in fact, Piggott did not take the actions set forth above, he may have had valid tactical reasons. Bragg must demonstrate that Piggott's representation of Norwood created a conflict of interest that actually affected Piggott's performance. Bragg fails to carry that burden.

2. Because Bragg fails to demonstrate an ineffective withdrawal, we need not and do not reach the issue of whether, or under what circumstances, a failure to withdraw from a conflicting client constitutes an actual conflict of interest.

3. The record does not disclose whether Piggott interviewed Norwood about Bragg's case after he was ordered to withdraw from his representation of Norwood.

### 2. Failure to Investigate

Bragg also argues that Piggott rendered ineffective assistance of counsel by failure to investigate. We disagree.

To establish ineffective assistance of counsel, Bragg must demonstrate: (1) that Piggott's performance was unreasonable under prevailing professional standards, *Strickland*, 466 U.S. at 687–91, 104 S.Ct. 2052; and (2) that there is a reasonable probability that but for Piggott's unprofessional errors, the result would have been different. *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

#### a. Cause

Bragg argues that he received ineffective assistance of counsel because Piggott did not review in timely fashion the police report that stated that Williams identified Norwood as a passenger in Bragg's car on the night of the shooting, and because Piggott did not further question his investigator after learning that Norwood told the investigator that he knew "all about" Bragg's case.[4]

■■■ Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052. This includes a duty to investigate the defendant's "most important defense," *Sanders*, 21 F.3d at 1457, and a duty adequately to investigate and introduce into evidence records that demonstrate factual innocence, or that raise sufficient doubt on that question to undermine confidence in the verdict. *Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir.1999). However, "the duty to investigate and prepare a defense is not limitless: it does not necessarily require that every conceivable witness be interviewed." *Hendricks v. Calderon*, 70 F.3d 1032, 1040 (9th Cir.1995) (citations and quotations omitted). "A claim of failure to

interview a witness ... cannot establish ineffective assistance when the person's account is otherwise fairly known to defense counsel." *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir.1986) (citations and quotations omitted). When the record clearly shows that the lawyer was well-informed, and the defendant fails to state what additional information would be gained by the discovery she or he now claims was necessary, an ineffective assistance claim fails. *Id.* Furthermore, "ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case." *Id.*

■■■ Here, Bragg does not identify any information that Piggott had not already gained from other witnesses that he would have gained from interviewing Norwood, further questioning his investigator, or learning earlier that Williams would identify Norwood as a passenger in Bragg's car on the night of the shooting. There is no evidence that investigating Norwood would be akin to investigating "the most important defense." In fact, Bragg does nothing more than speculate that, if interviewed, Norwood might have given information helpful to Bragg.

Furthermore, the government's case against Bragg was strong. The passenger in the victim's car identified Bragg as the driver; other witnesses identified Bragg's car, Bragg or both; and Bragg stated, when asked about his car and who was with him during the shooting: "There is nothing I can say. I'll just have to do the time." This and other evidence against Bragg is compelling, and Bragg has not made a persuasive showing that Piggott's investigation failures were "unreasonable under prevailing professional standards." We do not have before us evidence of Piggott's investigation, lack of investigation or his reasons for failing to investigate. On this record, we can only conclude that Bragg has not made a sufficient

---

**4.** The record does not disclose whether Piggott interviewed his investigator about Norwood's statements after he was ordered to

withdraw from his representation of Norwood.

showing of cause to demonstrate ineffective assistance of counsel for failure to investigate.

### b. Prejudice

■ Even if Piggott's investigation efforts were flawed, Bragg must make a sufficient showing of prejudice from Piggott's inaction to succeed with his ineffective assistance claim. The standard for prejudice is a reasonable probability that but for counsel's error the result would have been different, *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052, but Bragg offers no further evidence of prejudice than he offered for adverse effect. Bragg did not show a reasonable probability that, but for Piggott's alleged investigative omissions, the result would have been different. Bragg fails to satisfy the prejudice prong because any prejudice from any investigation error does not sufficiently undermine confidence in the jury's verdict.

### B. *Possible Remand for an Evidentiary Hearing*

Although the record does not support a grant of Bragg's petition for a writ of habeas corpus, the record leaves unanswered some key factual questions. While the government asserts that the state trial court cured any actual conflict of interest by ordering Piggott's withdrawal from Norwood's case, the record leaves us with some lingering doubt about whether Piggott may have felt constrained by his former representation of Norwood throughout the remainder of Bragg's trial. If, as Bragg asserts, Piggott felt so constrained, this would be evidence that Piggott labored under an actual conflict of interest during Bragg's trial.

Further, Bragg asserts that Piggott could have uncovered and used at trial crucial information about his case had he not felt constrained by his representation of Norwood. The record contains evidence that Piggott knew that Norwood had been identified as a passenger in the car; that Norwood's mother told Piggott "certain things about May"; and that Piggott had been told that Norwood knew "all about" Bragg's case. But the record is not clear what, if anything, Piggott or his investigator knew about Norwood's knowledge of Bragg's case. Nor is it clear whether Piggott adequately sought further information about Norwood's involvement in the case after being ordered to withdraw. Additionally, the record lacks information on Piggott's strategy or reasoning underlying any failure further to investigate Norwood's involvement in Bragg's case or for his decision not to argue that Norwood was the shooter. In this murder case where the government lacked a theory regarding the identity of the actual shooter, and where gun-shell casings in the car did not match Bragg's gun, open questions raised by these gaps in the record are troubling.

■ These unanswered questions lead us to ask whether we may remand for an evidentiary hearing to supplement the record in this state habeas case. We conclude that we may not.

■ In reviewing Bragg's habeas petition arising from his state court conviction, under AEDPA § 2254(e)(2)[5] we may not grant in this case an evidentiary hearing if Bragg "has failed to develop the factual basis of a claim in State court proceedings."[6] As our analysis above demon-

---

**5.** If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

 (A) the claim relies on—
 (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

 (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
 (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

**6.** Bragg does not argue that he satisfies

strates, the record developed by Bragg in state court does not give adequate factual support for us to credit his claims of ineffective assistance of counsel. It has been explained by the United States Supreme Court that a failure to develop in state court an adequate record for relief precludes an evidentiary hearing in federal court in a habeas action when a petitioner has "neglected his [or her] rights in state court." *Williams v. Taylor*, 529 U.S. 420, 120 S.Ct. 1479, 1490, 146 L.Ed.2d 435 (2000); *see also Baja v. Ducharme*, 187 F.3d 1075, 1078–79 (1999).

 A petitioner has not neglected his or her rights in state court if diligent in efforts to search for evidence. *Williams*, 120 S.Ct. at 1490. "Diligence … depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Id.* "Diligence require[s] in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.*

Here, while Bragg appealed his conviction in the state court alleging that facts on the record established ineffective assistance of counsel, he never moved for an evidentiary hearing to resolve any factual ambiguities. Also, Bragg brought his ineffective assistance claims before state court only on direct review and did not take advantage of state collateral proceedings to develop the factual record before he filed his federal habeas petition.[7] Bragg's

inactions show insufficient diligence to satisfy the standard set forth in *Williams* and *Baja*. Because he failed to request an evidentiary hearing and failed to file a state habeas petition, Bragg "failed to develop the factual basis of [his] claim in State court proceedings." Despite concerns about gaps in the record, we hold that AEDPA in this case precludes us from remanding for an evidentiary hearing.

## CONCLUSION

The district court's order denying Bragg's petition for a writ of habeas corpus is AFFIRMED.

---

§ 2254(e)(2)(A) or (B). Thus any "fail[ure] to develop the factual basis of [his] claim in State court," effectively precludes an evidentiary hearing in this case.

7. Ineffective assistance of counsel claims, unlike most claims alleging error at trial and sentencing, are best presented for the first time in collateral proceedings because in collateral proceedings new trial counsel can more effectively review the record and discover information regarding trial counsel error. *See, e.g., United States v. Molina*, 934 F.2d 1440, 1446 (9th Cir.1991) (collateral proceedings permit the trial "judge first to decide whether the [ineffective assistance] claim has

merit, and second, if it does, to develop a record as to what counsel did, why it was done, and what, if any, prejudice resulted."); *Hoffman v. Arave*, 236 F.3d 523, 535 (9th Cir.2001); *see also Osborn v. Shillinger*, 861 F.2d 612, 623 (10th Cir.1988) ("ineffectiveness claims are ordinarily inappropriate to raise on direct appeal because they require additional fact-finding [and] … cannot be made on the basis of the record"); *C.f., Kimmelman v. Morrison*, 477 U.S. 365, 378, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) ("an accused will often not realize that he has a meritorious ineffectiveness claim until he begins collateral review proceedings").