**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

MAR 26 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| STEPHEN EDWARD MAY, | No.    17-15603 |
| Petitioner-Appellee, | D.C. No. 2:14-cv-00409-NVW |
| v. | |
| CHARLES L. RYAN; MARK BRNOVICH, Attorney General, | MEMORANDUM[*] |
| Respondents-Appellants. | |

| | |
|---|---|
| STEPHEN EDWARD MAY, | No.    17-15704 |
| Petitioner-Appellant, | D.C. No. 2:14-cv-00409-NVW |
| v. | |
| CHARLES L. RYAN; MARK BRNOVICH, Attorney General, | |
| Respondents-Appellees. | |

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted March 7, 2019
Phoenix, Arizona

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before:  IKUTA and FRIEDLAND, Circuit Judges, and BLOCK,** District Judge.

The government appeals the district court's grant of habeas corpus. Familiarity with the facts and procedural history is presumed.

1.  As the State properly conceded at oral argument, we review de novo under *Strickland v. Washington*, 466 U.S. 668 (1984), whether counsel's ineffectiveness constitutes cause and prejudice to excuse procedural default of a claim, even where the state court considered the same allegations of deficient performance.  *See Visciotti v. Martel*, 862 F.3d 749, 769 (9th Cir. 2016).  But, even reviewing de novo, we reach the same conclusion as did the state court with respect to May's claim that trial counsel was ineffective for failing to object to the constitutionality of the child molestation statute.  Given the long-standing status of the law in Arizona that the State is not required to prove sexual intent to successfully prosecute a defendant for child molestation, *see State v. Sanderson*, 898 P.2d 483, 491 (Ariz. Ct. App. 1995), which provided the background for the "prevailing professional practice at the time of the trial," *Bobby v. Van Hook*, 558 U.S. 4, 8 (2009) (per curiam),[1] we cannot conclude that trial counsel's failure to

---

** The Honorable Frederic Block, United States District Judge for the Eastern District of New York, sitting by designation.

[1] Two Arizona decisions issued after May's trial confirmed that Arizona courts approved of the approach taken by the statutory scheme under which May was prosecuted, which required the defendant to prove any affirmative defense by a preponderance of the evidence, including lack of sexual intent.  *See State v.*

object to the constitutionality of the statute placing the burden of proving lack of intent on the defendant fell "below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688. The district court erred in holding otherwise. Because we do not reach the constitutionality of the Arizona child molestation statute, we vacate the district court's judgment in that respect. *See C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 988-89 (9th Cir. 2011); *see also Camreta v. Greene*, 563 U.S. 692, 713-14 (2011).

2. To evaluate May's claim that trial counsel was ineffective for failing to object to reconstituting the jury after a mistrial was declared, the Antiterrorism and Effective Death Penalty Act instructs us to "look to the last reasoned state-court decision" analyzing that claim. *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003). We will accord deference to that state court decision unless it "(1) was contrary to or involved an unreasonable application of clearly established federal law, or (2) was based on an unreasonable determination of the facts." *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015). But, where the state court has not ruled on the merits of the claim, we review the claim de novo. *See Stanley v. Cullen*, 633 F.3d 852, 859-60 (9th Cir. 2011). In the ineffective assistance of counsel context, if the state court resolved the claim on one prong of *Strickland* without reaching

_____

*Holle*, 379 P.3d 197, 202 (Ariz. 2016); *State v. Simpson*, 173 P.3d 1027, 1030 (Ariz. Ct. App. 2007).

3

the other, we assess the merits of the unaddressed prong de novo. *See Weeden v. Johnson*, 854 F.3d 1063, 1071 (9th Cir. 2017) (discussing *Rompilla v. Beard*, 545 U.S. 374, 390 (2005), and *Porter v. McCollum*, 558 U.S. 30, 39 (2009) (per curiam)).

The "last reasoned state-court decision" on this claim comes from the Arizona Court of Appeals on postconviction review. *See State v. May*, No. 2 CA–CR 2012–0257, 2012 WL 3877855, at \*4 (Ariz. Ct. App. Sept. 7, 2012). Because the Court of Appeals "assum[ed], without deciding, that counsel's performance was deficient," *id.*, we review de novo whether May's counsel was objectively deficient for failing to object to the continued deliberations.

Given the trial record of this particular case, counsel's failure to object to permitting the jury to resume its deliberations after the trial judge declared a mistrial and discharged the jury constituted objectively deficient performance. It was not "sound trial strategy," *see Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)), for May's lawyer not even to attempt to preserve the mistrial based on a hung jury, because a mistrial here would have been a clearly advantageous result for May. The State's case turned entirely on the jury's believing the testimony of several child victims who all had struggled to provide details of the alleged molestation on the stand, including failing to remember whether some of the incidents even took place. The transcripts

4

memorializing the witnesses' failure to remember during the first trial would have been available to May in any second trial. May's counsel also had good reason to believe that, if the case had to be reset for a new trial, the victims might decide not to testify again. One of the counts had already been dismissed prior to the first trial because the victim's parents preferred that the victim receive counseling rather than testify, and the father of one of the other victims made statements at the pre-trial motions conference reflecting frustration with the length of proceedings and thereby suggesting a possibility that more victims might refuse to participate in a second trial. There was therefore a reasonable chance that, if the mistrial had remained in place, the State would not have pursued a second trial at all, or that the State would have pursued fewer charges if it did re-try May.

When pressed at argument about how May would have been worse off in a second trial, the State could only posit that May's counsel did not want the State to have an opportunity to prepare for a second trial with a copy of May's testimony from the first trial at hand. But May had vigorously proclaimed his innocence at trial, so it is unclear what benefit the State could have derived from having a copy of that testimony. The State contended at oral argument that May's demonstrably false statements that he did not know one of the victims or even "half a dozen children" were particularly damaging to his case and would have been used against him in a second trial. But those statements were made in a pre-trial police

5

interview and had already been admitted in the first trial—they would not be more damaging in some future proceeding, so the way they were introduced and responded to in the first trial did not make a second trial riskier for May.[2]

In light of these particular circumstances, when the trial judge asked if either party objected to the jury resuming deliberations after the court had already declared a mistrial and discharged the jury, competent counsel would have objected. The decision not to object was "completely unsupportable" on this record and therefore, "under the circumstances, could not have been considered a 'sound trial strategy.'" *Reynoso v. Giurbino*, 462 F.3d 1099, 1114 (9th Cir. 2006) (quoting *Strickland*, 466 U.S. at 689).

3. We also review de novo the prejudice prong of May's claim that trial counsel was ineffective for failing to object to reconstituting the jury after a

---

[2] Despite these facts, the dissent agrees with the State that the prosecution's possession of the transcript would have disadvantaged May in a second trial because "the prosecutor would be able to refine his case and improve the chances of obtaining a conviction if he got a second bite at the apple." That may be true in some cases, but there is no evidence it is true on this record. We further note that the only expert to opine on May's counsel's decision concluded that failing to pursue the mistrial fell far short of reasonable professional judgment. The expert testified in the postconviction evidentiary hearing that, in his view, taking the mistrial would be the best defense strategy in all cases, but was especially so in this one because of a trial record that only advantaged May. Consequently, we do not believe that May's counsel's refusal to object to the resumption of deliberations was a "reasonable on-the-spot calculation," even under the strong deference of *Strickland*. The dissent accuses us of improperly engaging in hindsight, but every fact we have pointed to was available to May's counsel at the time the trial judge asked whether either side objected to the jury resuming deliberations.

mistrial was declared, because the Arizona Court of Appeals' explanation of why there was no reasonable probability that an objection would have resulted in a different outcome was either contrary to or an unreasonable application of *Strickland*. In addressing whether May was prejudiced by his counsel's failure to object to the resumed deliberations, the Court of Appeals concluded that "May [could not] show prejudice because [the court] rejected the underlying claim of error on appeal." *State v. May*, 2012 WL 3877855, at *4. On direct review, however, the Court of Appeals had analyzed whether the jury was improperly reconstituted solely for *fundamental error*, *State v. May*, No. 1 CA-CR 07-0144, 2008 WL 2917111, at *2-3 (Ariz. Ct. App. July 24, 2008), which asks the court to analyze whether (1) there was error, (2) the error was fundamental, and (3) the error prejudiced the defendant. *State v. Henderson*, 115 P.3d 601, 608 (Ariz. 2005). Arizona courts define "fundamental error" as "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *Id.* at 607 (quoting *State v. Hunter*, 688 P.2d 980, 982 (1984)). Asking whether the trial judge's failure to sua sponte maintain the mistrial amounted to fundamental error is different than asking whether the trial judge would have sustained an objection to the jury resuming deliberations if one had been made— the judge might have granted such an objection to prevent even the possibility of

juror contamination, or to avoid a ruling that would have been erroneous but that would not rise to the level of fundamental error.

The dissent reads the Court of Appeals' opinion differently, interpreting the decision as holding that there was no prejudice from the lack of objection because there was no error whatsoever in reconvening the jury, let alone fundamental error. Even under a charitable reading, the Court of Appeals did not hold that there was no error in how the jury reconvened here. As the dissent notes, the court instead held there was no per se rule that the jury could not be reconvened after discharge, so there was no "structural error requiring reversal." The use of the phrase "structural error requiring reversal" connotes that the court was concluding any error was not fundamental, not that there was no error in the first place.[3] The Court of Appeals' complete reliance on its prior analysis was therefore misplaced and either did not apply *Strickland* whatsoever or applied it in an unreasonable manner.

Reviewing prejudice de novo, therefore, we conclude that the prejudice

---

[3] The dissent fails to properly account for the fact that the Court of Appeals based its conclusion on direct appeal that there was no fundamental error in part on the premise that there was no evidence in the record that jurors had "reach[ed] for their cell phones to call friends or family immediately upon discharge." *May*, 2008 WL 2917111, at \*3. On postconviction review, however, May had introduced this exact evidence, with one juror averring that "every one of" the jurors went on their phones after returning to the jury room. The Court of Appeals' opinion on direct review in no way suggests that this addition to the record evidence before it would have been meaningless to the court's analysis, particularly if it had been assessing whether there was a reasonable probability that an objection would have been sustained rather than whether fundamental (or structural) error occurred.

prong of *Strickland* is satisfied here. Given that the trial judge had declared a mistrial, had discharged the jury, had set a new trial date, and that the trial was of relatively short duration, there was "a reasonable probability" that had trial counsel objected to permitting the jury to continue its deliberations, the trial judge would have sustained the objection and maintained the mistrial. *Strickland*, 466 U.S. at 694; *see also United States v. Schaflander*, 743 F.2d 714, 719 (9th Cir. 1984) (assessing prejudice based on "[w]hether the trial court would have sustained the objection").

4. Accordingly, because we can grant relief on alternative grounds, *see Buckley v. Terhune*, 441 F.3d 688, 694 (9th Cir. 2006) (en banc), the judgment of the district court is **AFFIRMED**. We need not reach May's other arguments for affirmance.[4]

---

[4] We deny May's motion to strike the State's notices of authorities.

9

*May v. Ryan,* No. 17-15603, 17-15704
IKUTA, Circuit Judge, dissenting:

The majority makes two crucial errors in analyzing May's claim that trial counsel was ineffective for failing to object before allowing the jurors to resume deliberations after a mistrial.

First, the majority errs by reviewing this claim de novo. AEDPA deference is required because the Arizona Court of Appeals adjudicated this claim on the merits in its September 2012 decision and reasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984), in holding that May's ineffective assistance claim failed. *See* 28 U.S.C. § 2254(d).

The majority holds otherwise by misreading the court's earlier July 2008 decision on direct appeal, on which the court's 2012 decision relies. In its 2008 decision, the court rejected May's argument that the trial court had erred in allowing jury deliberations to continue after a mistrial. *See State v. May*, No. 1 CA-CR 07-0144, 2008 WL 2917111, at *2–3 (Ariz. Ct. App. July 24, 2008). Because May had not raised this objection at trial, the court considered whether an "error occurred, the error was fundamental, and [May] was prejudiced thereby." *Id.* at *2. After reviewing its prior cases—principally, *State v. Crumley*, 128 Ariz. 302 (1981) (in banc)—the court held that there was no error requiring reversal because there was no per se rule that "any verdict rendered after a jury once has

been discharged is null and void." *Id.* at *3. It also held that May had failed to show prejudice because the jurors had not been sent back into the community before reconvening. *See id.* And, "[i]n any event," even if the jurors had interacted with the public in the meantime, the Court knew "that [the jurors] did not have the extended opportunity for contact with the public that occurred in *Crumley*." *Id.*

In post-conviction filings, May subsequently raised the related claim that his attorney was ineffective for failing to object to continuing jury deliberations after mistrial. In September 2012, the Arizona Court of Appeals likewise rejected this claim, stating that even if counsel's performance was deficient, "May cannot show prejudice because we rejected the underlying claim of error on appeal," and "[i]nability to show prejudice is fatal to a claim of ineffective assistance of counsel." *State v. May*, No. 2 CA-CR 2012-0257-PR, 2012 WL 3877855, at *4 (Ariz. Ct. App. Sept. 7, 2012). Reading this ruling under "§ 2254(d)'s highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citations and quotation marks omitted), we are compelled to conclude that the Arizona Court of Appeals rejected May's claim because the trial court did not err in allowing continuing jury deliberations, and

therefore even if May's attorney had objected to continuing jury deliberations, it was not reasonably probable that the outcome would have been different. This analysis is not an unreasonable application of *Strickland*'s prejudice prong, and therefore we must defer to the state court's decision. *See id.* at 24–25. The majority's decision to the contrary fails to give the state court's decision the deference which is due.[1]

Second, even if we reviewed the deficiency prong de novo, the majority errs in holding that May's counsel was deficient. Under *Strickland*, "[j]udicial scrutiny of counsel's performance must be highly deferential." 466 U.S. at 689. We are precluded from "second-guess[ing] counsel's assistance," and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* In other words,

---

[1] The majority fails to recognize that even if the jurors reached for their cell phones after they were discharged (as a single juror testified), Maj. Op. at 9 n.3, the Court of Appeals determined that the jurors "did not have the extended opportunity for contact with the public that occurred in *Crumley*," *May*, 2008 WL 2917111, at *3; therefore, the court could reasonably conclude that the trial court's resumption of deliberations was not erroneous as a matter of state law.

3

"defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted).

Here, May's lawyer explained that his decision not to object was a tactical one. He was motivated by a reasonable concern that if the case were retried, the prosecution would have "a complete transcript of [May's] testimony from the mistried case." Further, May's counsel could have reasonably thought that the jury would return acquittals, given that the jury had previously deadlocked and received an impasse instruction. "Reconstruct[ing] the circumstances of counsel's challenged conduct" and "evaluat[ing] the conduct from counsel's perspective at the time," *Strickland*, 466 U.S. at 689, May's counsel made a reasonable on-the-spot calculation that it would better serve his client to go forward with the current jury. There is no basis for concluding that this decision violated prevailing professional norms; a reasonable attorney could conclude that a jury as divided as this one might acquit his client while, on the other hand, the prosecutor would be able to refine his case and improve the chances of obtaining a conviction if he got a second bite at the apple. Exercising the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, we must affirm the Arizona Court of Appeals's determination that there was no deficiency here.

The majority's decision to the contrary makes all the errors *Strickland* warned us against. Relying on "the distorting effects of hindsight," *id.* at 689, the majority speculates that "mistrial here would have been a clearly advantageous result for May." Indulging in armchair quarterbacking, the majority surveys the nature of the State's case, speculates that the victims might have dropped out if there was a second trial, and supposes that should victims drop out, the State would become discouraged and choose not to try May again. In response to May's counsel's reasonable assessment that the prosecutor would have an advantage if offered a mulligan, the majority presents as legal analysis a series of detailed conjectures and predictions about how a second trial would unfold.[2] But pure speculation is insufficient to establish deficient performance, and we should reject such uninformed prognostications. *See Gonzalez v. Knowles*, 515 F.3d 1006, 1014–16 (9th Cir. 2008); *Bragg v. Galaza*, 242 F.3d 1082, 1088–89 (9th Cir. 2001), as amended on denial of reh'g, 253 F.3d 1150 (9th Cir. 2001).

Because AEDPA requires us to defer to the decision of the Arizona Court of Appeals, I would reject May's claim of ineffective assistance of counsel for failing

---

[2] The majority strangely defers to the post-hoc judgment of *defense counsel's expert*, Maj. Op at 6 n.2, instead of following the Supreme Court's direction that "substantial deference must be accorded to *counsel's* judgment." *Premo v. Moore*, 562 U.S. 115, 126 (2011) (emphasis added).

to object to the resumption of jury deliberations.  The majority's conclusion is contrary to AEDPA and binding Supreme Court precedent.  Therefore, I dissent.