IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) | No. 81689-6-I |
| L.C. JOHNSON, | ) ) | |
| Petitioner. | ) ) ) | UNPUBLISHED OPINION |

VERELLEN, J. — In this personal restraint petition, L.C. Johnson contends a retrial is required because he received ineffective assistance of counsel. Johnson argues defense counsel's investigation was insufficient and she failed to introduce evidence to impeach prosecution witnesses while bolstering his own testimony. Because Johnson does not show defense counsel's decisions were deficient or prejudiced his right to a fair trial, he fails to establish he received ineffective assistance of counsel.

Therefore, we deny the petition.

FACTS[1]

Two young men were sitting in a Ford Mustang in a parking lot outside of Johnson's apartment complex, listening to music and smoking marijuana. The

_____

[1] All facts are from Johnson's direct appeal, unless otherwise noted. State v. Johnson, No. 77355-1-I, slip op. at 2-5 (Wash. Ct. App., Mar. 11, 2019) (unpublished), http://www.courts.wa.gov/opinions/pdf/773551.pdf.

young men had previously vandalized Johnson's car, beaten up his nephew, and injured Johnson while he was trying to break up the fight with his nephew. Johnson shot at the men while they sat in the Mustang, lightly grazing one. A jury found Johnson guilty of first degree and second degree assault, both with firearm enhancements, and he was sentenced to 207 months' confinement.

During trial, both young men testified for the State, as did Valentina Miroshnyk and her cousin, Ruvim Rymaruk. Miroshnyk testified to seeing Johnson get out of his car with a gun in his hand and shoot at the young men, hearing two gunshots. Rymaruk heard a gunshot, ran outside, heard someone scream, "You shot him," and saw a gun in Johnson's hand. He pulled out his cell phone and began recording a video. Johnson can be seen driving away with his wife Jennifer[2] in their car. He returned about 20 seconds later, reversing up the street and into the parking lot about 15 feet from the Mustang, and got out of the car empty-handed. He approached the Mustang and tried repeatedly to get close to it, even as one of the young men shoved him away. Kai Cornyn, a friend of Johnson's, intervened and stopped the shoving. Cornyn also testified at trial. Defense counsel did not call Jennifer to testify. Johnson testified in his own defense, denying he owned a gun, shot a gun, or used force against anyone on the day of the alleged shooting.

---

[2] Because Johnson and his wife share the same last name, we refer to her by her first name.

Johnson filed a direct appeal, and this court affirmed. Johnson timely filed a personal restraint petition.

ANALYSIS

Johnson contends he received ineffective assistance of counsel, requiring retrial or a reference hearing.

We review claims of ineffective assistance of counsel de novo.[3] To prevail, Johnson must prove that defense counsel's performance was deficient and that without the deficient performance the result, by a reasonable probability, would have been different.[4] Johnson's claim fails unless both are proven.[5] When considering a claim of ineffective assistance, we presume defense counsel's performance was not deficient.[6] To overcome this presumption, Johnson "must establish an absence of any legitimate trial tactic that would explain counsel's performance."[7]

I. Failure to Investigate

Johnson contends defense counsel was deficient because she failed to conduct an adequate investigation. Part of providing effective representation is

---

[3] Matter of Lui, 188 Wn.2d 525, 538, 397 P.3d 90 (2017) (citing State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009)).

[4] Id. (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

[5] In re Pers. Restraint of Crace, 174 Wn.2d 835, 847, 280 P.3d 1102 (2012) (citing Strickland, 466 U.S. at 697).

[6] Lui, 188 Wn.2d at 539 (citing State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011)).

[7] Id. (citing Grier, 171 Wn.2d at 33).

investigating the case and interviewing witnesses.[8] Failure to interview a particular witness can constitute deficient performance,[9] but the "duty to investigate 'does not necessarily require that every conceivable witness be interviewed.'"[10] A reviewing court will defer to defense counsel's decisions when the record shows she "investigated the case and made an <u>informed</u> and reasonable decision against conducting a particular interview or calling a particular witness."[11] "At the least, a defendant seeking relief under a 'failure to investigate' theory must show a reasonable likelihood that the investigation would have produced useful information not already known to defendant's trial counsel."[12]

Johnson contends defense counsel failed in three different ways to conduct and utilize the results of a diligent investigation: first, not interviewing Miroshnyk, Rymaruk, or Jennifer; second, not transcribing six recorded police interviews with the young men, Miroshnyk, or Rymaruk;[13] and, third, not obtaining a computer aided dispatch (CAD) report before trial began.

---

[8] <u>State v. Jones</u>, 183 Wn.2d 327, 339, 352 P.3d 776 (2015) (citing <u>State v. Ray</u>, 116 Wn.2d 531, 548, 806 P.2d 1220 (1991)).

[9] <u>Id.</u> at 340 (citing <u>Ray</u>, 116 Wn.2d at 548).

[10] <u>In re Pers. Restraint of Davis</u>, 152 Wn.2d 647, 739, 101 P.3d 1 (2004) (quoting <u>Bragg v. Galaza</u>, 242 F.3d 1082, 1088 (9th Cir. 2001)).

[11] <u>Jones</u>, 183 Wn.2d at 340 (citing <u>State v. Hess</u>, 12 Wn. App. 787, 788-90, 532 P.2d 1173 (1975); <u>State v. Floyd</u>, 11 Wn. App. 1, 2, 521 P.2d 1187 (1974)).

[12] <u>Davis</u>, 152 Wn.2d at 739 (citing <u>Bragg</u>, 242 F.3d at 1088).

[13] Johnson assigns error to the failure to have seven interviews transcribed, Pet'r's Supp. Br. at 3, but his argument states the deficiency was a failure to transcribe six interviews, <u>id.</u> at 38. Regardless of the number, the analysis is the same.

Miroshnyk and Rymaruk were both interviewed by the police, and defense counsel received recordings of them. The interviews were thorough and clearly relayed their perspectives. Because Johnson has not provided any evidence suggesting defense counsel failed to listen to them, we presume none exists.[14] The detailed interviews of Miroshnyk and Rymaruk provided defense counsel knowledge of their likely testimony. Based upon that information, counsel could decide how to spend her time preparing for trial. Because she made an informed, reasonable decision not to interview Miroshnyk and Rymaruk, Johnson fails to show this decision was deficient.[15]

Johnson also fails to provide any evidence that defense counsel did not interview Jennifer, despite it being his burden to do so,[16] relying instead on speculation. Even if such evidence existed, Johnson has the burden of demonstrating the missing interview would have provided "useful information not already known" to defense counsel.[17] Jennifer's post-trial declaration merely echoes Johnson's trial testimony, and no other evidence demonstrates Jennifer's

---

[14] See In re Pers. Restraint of Hubert, 138 Wn. App. 924, 928, 158 P.3d 1282 (2007) (petitioner bears the burden of proving actual and substantial prejudice) (citing Davis, 152 Wn.2d at 671-72); see also In re Pers. Restraint of Yates, 177 Wn.2d 1, 18, 296 P.3d 872 (2013) ("To establish a prima facie showing required for a reference hearing, a petitioner must offer 'the facts underlying the claim of unlawful restraint and the evidence available to support the factual allegations.'") (quoting In re Pers. Restraint of Rice, 118 Wn.2d 876, 885-86, 828 P.2d 1086 (1992)).

[15] Jones, 183 Wn.2d at 340.

[16] Yates, 177 Wn.2d at 18 (citing Rice, 118 Wn.2d at 885-86).

[17] Davis, 152 Wn.2d at 739 (citing Bragg, 242 F.3d at 1088).

likely testimony. Johnson fails to demonstrate defense counsel did not interview Jennifer or that the absence of an interview would have been prejudicial.

Johnson asserts defense counsel was deficient because she did not have the audio recordings of police interviews with witnesses, such as Miroshnyk, transcribed. Johnson argues this prejudiced him because his "attorney did not have the basic documents necessary to conduct cross-examination."[18] But Johnson fails to cite authority requiring a written transcript to impeach a witness with an inconsistent statement. Although ER 613(b) requires the establishment of proper foundation before impeaching a witness with extrinsic evidence of a prior inconsistent statement,[19] ER 613(a) allows the use of written and unwritten statements for impeachment.[20] Because Johnson fails to show any requirement to transcribe recorded interviews to impeach witnesses, he fails to establish this decision was unreasonable.

To the extent Johnson argues defense counsel's impeachment of Miroshnyk was deficient because it did not impeach her testimony, the record shows otherwise. Defense counsel used Miroshnyk's initial statement to the police rather than her official interview to undermine the accuracy of her memory and of

---

[18] Pet'r's Supp. Br. at 39.

[19] State v. Horton, 116 Wn. App. 909, 914, 68 P.3d 1145 (2003).

[20] 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE, § 613.9 at 592 (6th ed. 2016) (written or oral statements can be used for impeachment).

her perspective on the shooting. Because "[d]eficient performance is not shown by matters that go to trial strategy or tactics,"[21] these arguments are unconvincing.

Johnson argues defense counsel failed to conduct a diligent investigation because she did not obtain a particular CAD report to corroborate Johnson's claim that Miroshnyk and Rymaruk were biased against him.[22] While being cross-examined, Johnson asserted that Miroshnyk and Rymaruk recorded the second half of his encounter with his victims and testified against him because of a personal "vendetta" against him caused by him calling the police on their relative.[23] Johnson contends the absence of this report confirming his call to police undermined his credibility.

But the CAD report would have confirmed only that on February 2, 2017, Johnson had called the police to report a "fight" between a 13-year old "Ukrainian male," who was the aggressor, and another 13-year old boy.[24] The CAD does not name the alleged aggressor or give any details about him except Johnson's guesses about his age and nationality. When asked to name either boy, Johnson

---

[21] State v. Hendrickson, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996) (citing State v. Garrett, 124 Wn.2d 504, 520, 881 P.2d 185 (1994); State v. Mak, 105 Wn.2d 692, 718 P.2d 407 (1986)).

[22] Although Johnson assigns error to the absence of "[t]he records of those calls," meaning several CAD reports, Pet'r's Supp. Br. at 3, 38, his arguments are limited to the CAD report about Miroshnyk and Rymaruk's relative, Pet'r's Supp. Br. at 44-51; Reply Br. at 13-17.

[23] Report of Proceedings (Feb. 15, 2017) at 590.

[24] Pet'r's Supp. Br. at 46.

7

could not. At best, the CAD report was relevant only if the aggressor actually was related to Miroshnyk and Rymaruk.

ER 104 governs conditional relevance. "[T]he trial court's proper inquiry under ER 104(b) is 'whether the evidence is sufficient to support a finding of <u>the needed fact</u>.'"[25] Johnson argues the witnesses' "Ukrainian names" and the "evidence showing that many of the members of this large family lived in the complex"[26] is sufficient to make the CAD report relevant. Because this relies upon speculation and does not demonstrate the CAD was about a relative of Miroshnyk or Rymaruk, we disagree.[27] The CAD report was irrelevant. Because the CAD report was not relevant and therefore inadmissible,[28] Johnson fails to show defense counsel was deficient for not obtaining it.

## II. Failure to Introduce Evidence

Johnson argues defense counsel was ineffective because she did not call Jennifer to testify and did not invite certain testimony from Cornyn, Johnson's friend.

"Generally the decision whether to call a particular witness is a matter for differences of opinion and therefore presumed to be a matter of legitimate trial

---

[25] <u>State v. Dixon</u>, 159 Wn.2d 65, 78, 147 P.3d 991 (2006) (quoting <u>State v. Karpenski</u>, 94 Wn. App. 80, 102, 971 P.2d 553 (1999)).

[26] Reply Br. at 17.

[27] <u>Dixon</u>, 159 Wn.2d at 78 ("When a trial judge's function is to decide whether the evidence is sufficient to support a finding, a reviewing court's function will be the same.") (quoting <u>Karpenski</u>, 94 Wn. App. at 104).

[28] ER 402.

tactics."[29]  Johnson asserts Jennifer's testimony would have been beneficial because it was "different from that offered by the State's witnesses" and corroborated Johnson's testimony.[30]  But it is also apparent that calling Jennifer to testify about what she said to her husband would present a substantial risk by opening her to cross-examination about what Johnson said and did immediately before and after the shooting.[31]  On this record, whether to call Jennifer was a legitimate tactical decision.

Even if it was not legitimate, Johnson fails to show prejudice.  Without more, the addition of Jennifer's corroboration does not allow "a reasonable probability that the result of the proceeding would have been different."[32]  Three eyewitnesses testified to seeing Johnson holding a gun and pointing it at the victims, another saw Johnson approaching the Mustang seconds before hearing a gunshot that grazed one victim, and Rymaruk began videoing Johnson because he heard a gunshot.  "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'  In other words, '[t]he

---

[29] Davis, 152 Wn.2d at 742 (citing State v. Byrd, 30 Wn. App. 794, 799, 638 P.2d 601 (1981)).

[30] Reply Br. at 22.

[31] Because the couple's children were in Johnson's car with their parents, their communications would not have been privileged.  See State v. McKee, 141 Wn. App. 22, 38, 167 P.3d 575 (2007) (spousal communications privilege is inapplicable when communications are not confidential) (citing Swearingen v. Vik, 51 Wn.2d 843, 848, 322 P.2d 876 (1958)).

[32] Lui, 188 Wn.2d at 538 (citing Strickland, 466 U.S. at 687).

likelihood of a different result must be substantial, not just conceivable.'"[33] Because the jury heard Johnson's testimony, weighed it against the State's witnesses, and chose not to credit his account, it is not substantially likely that his wife's mere corroboration would have contributed to a different result.

Johnson argues defense counsel did not make a legitimate tactical decision by declining to rely on Cornyn to corroborate his testimony. Defense counsel knew Cornyn's potential testimony because she interviewed him. He was not present for the assaults themselves, so Cornyn's testimony could not contradict critical testimony from the State's witnesses about Johnson pointing a gun at and shooting at the victims. Also, Cornyn's credibility was ripe for attack because he considers Johnson a "great friend" and has two prior convictions for theft.[34]

It was also reasonable to decide against having Cornyn corroborate Johnson's version of events when his likely testimony about seeing a gun in the Mustang would have been considerably undermined by the video recording. In Cornyn's police interview, he said Johnson did not shoot a gun and, instead, claimed to have seen the handle of a handgun beneath the passenger's seat while pulling Johnson out of the Mustang's passenger-side door. He also said Johnson was trying to grab the gun from beneath the seat. But the video shows the passenger door was closed and that Johnson was never inside the vehicle. And one of the victims testified that he rolled up the passenger window when Johnson

---

[33] Id. (quoting Harrington v. Richter, 562 U.S. 86, 104, 112, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)) (internal quotation marks and citations omitted).

[34] Cornyn Police Interview (Feb. 7, 2017) at 20.

approached the Mustang after the shooting. Johnson fails to show defense counsel made an illegitimate or unreasonable decision to keep Cornyn's testimony brief.[35]

Therefore, we deny Johnson's petition.

_____

WE CONCUR:

_Andrus, A.C.J._          _Mann, C.J._

---

[35] Johnson also alleges a Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed 2d 215 (1963), discovery violation and a Sixth Amendment violation based upon a conspiracy between the State and defense counsel to suppress Cornyn's testimony. To prove his allegation, Johnson relies on an e-mail chain from defense counsel to the prosecuting attorney. But the e-mails show the ordinary disclosure of witness names, contact information, and possible testimony. See, e.g., CrR 4.7(b)(1) ("the defendant shall disclose to the prosecuting attorney the following material and information within the defendant's control . . . the names and addresses of persons whom the defendant intends to call as witnesses . . . together with any written or recorded statements"). These e-mails do not support a conspiracy or a Brady violation. Because his allegations rely upon speculation rather than evidence, his argument is unconvincing. Yates, 177 Wn.2d at 18 (citing Rice, 118 Wn.2d at 885-86).